FINOVA CAPITAL CORPORATION,
Plaintiff–Appellant,

v.

RYAN HELICOPTERS U.S.A., INCOR-
PORATED, and St. Lucia Helicopters
Limited, Defendants–Appellees.

No. 98–3754.

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1999.

Decided June 25, 1999.

Michael D. Richman (argued), Sachnoff & Weaver, Chicago, IL, for Plaintiff–Appellant.

John S. Hoff (argued), Hoff & Garley, Chicago, IL, for Defendants–Appellees.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

This diversity action involves a dispute over the ownership of two helicopters located on the Island of St. Lucia in the British West Indies. The helicopters were leased by Ryan Helicopters USA from Rotorcraft Partnership Ltd. and operated on St. Lucia by Ryan's subsidiary, St. Lucia Helicopters Ltd. When the deal turned sour, Ryan and St. Lucia Helicopters sued Rotorcraft in the High Court of St. Lucia. Some months later, Finova Corporation, a financing company that had succeeded to the rights of Rotorcraft, filed this action in the district court naming Ryan and St. Lucia Helicopters as defendants.[1] The district court denied Ryan's motion to dismiss the action but agreed to stay the proceedings pending the completion of the St. Lucia suit. Finova now appeals the stay and we affirm.

Ryan's and Finova's rival bids for ownership of the helicopters are based on the lease agreement concluded between Ryan and Rotorcraft on September 28, 1992. The agreement provided that Ryan would lease the two helicopters for a period of 60 months. It also gave Ryan an option to purchase the helicopters for $157,622 at the conclusion of the lease term, provided that no payments were due and owing. The parties agreed that all disputes would be resolved in Illinois and governed by Illinois law. On August 29, 1996, Ryan and Rotorcraft entered into a supplemental agreement directed toward the remaining payments due under the lease. The supplemental agreement designated either St. Lucia or Illinois as a forum for the resolution of disputes and, similarly, either the laws of St. Lucia or of Illinois as the applicable law. Around this time, Rotorcraft assigned all of its rights and interests under the lease to Finova.

On October 15, 1997, the date the lease expired, Ryan sued Rotorcraft and its president, James Panoff, in the High Court of St. Lucia seeking a declaration that it was entitled to ownership of the helicopters on the payment of certain outstanding sums. The following February, Finova applied to intervene in the St. Lucia proceeding. In an order dated April 7, 1998, the St. Lucia court granted Finova's application and Ryan subsequently amended its pleadings to include Finova as a party. Also on April 7, 1998, the St. Lucia court entered a default judgment against Rotorcraft and Panoff. Meanwhile, Finova had made moves of its own to assert its rights under the lease. Prior to the expiration of the lease, and again shortly thereafter, Finova wrote to Ryan demanding the return of the helicopters.

---

1. Ryan Helicopters is a Florida corporation and St. Lucia Helicopters a St. Lucia corporation. The lease agreement indicates that Rotorcraft is incorporated in Maryland but conducts business in Illinois. Rotorcraft's president, James Panoff, is an Illinois citizen. Finova is a Delaware corporation with its principal place of business in Phoenix, Arizona. For ease of discussion, we use "Ryan" throughout to refer to Ryan and St. Lucia Helicopters collectively.

On February 6, 1998—a few weeks before it intervened in the St. Lucia proceedings—Finova filed suit in Illinois seeking a declaration of ownership under the lease and the return of the helicopters. Ryan moved to dismiss the suit on the basis of the pending St. Lucia action. The district court denied the motion to dismiss but granted Ryan's alternative motion to stay the proceedings pending the completion of the litigation in St. Lucia. The district court reasoned that the parties had not designated Illinois as the exclusive forum for the resolution of disputes under the lease and supplemental agreement and that exceptional circumstances existed that militated in favor of abstention. Finova challenges this decision, which we review for abuse of discretion. *See Sverdrup Corp. v. Edwardsville Community Unit Sch. Dist. No. 7*, 125 F.3d 546, 548–49 (7th Cir.1997).

■ Although federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress, in exceptional cases, a federal court should stay a suit and await the outcome of parallel proceedings as a matter of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (internal quotation and citation omitted); *Sverdrup*, 125 F.3d at 549; *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir.1990). Courts usually grapple with the issue of abstention in the context of parallel state court proceedings. The situation is somewhat different where, as here, "the alternate forum is not the tribunal of a state of the federal union to which, under our Constitution, we owe a special obligation of comity." *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 685 (7th Cir.1987). Nevertheless, in the interests of international comity, we apply the same general principles with respect to parallel proceedings in a foreign court. *See id.*

■ In assessing the propriety of abstention, our first task is to determine whether the federal and foreign proceedings are in fact parallel. *See Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698 (7th Cir.1992). "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Schneider*, 903 F.2d at 1156. We have little difficulty in concluding that these conditions are satisfied in the present case. Indeed, counsel for Finova conceded as much at oral argument. The parties to the proceedings in the district court and in St. Lucia are substantially the same. Ryan and Finova are the parties in interest. (The absence of Rotorcraft and Panoff in the federal action is immaterial given that Finova has assumed Rotorcraft's rights under the lease.) In addition, the respective courts have been asked to resolve the same central issue, namely, who owns the helicopters under the terms of the lease. Since the principal matter of contention is identical, the granting of relief in one forum would dispose of the claims raised in the other. Thus, we agree with the district court that the proceedings are parallel.

■■ Our next task is to balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure. Relying on the guidance of the Supreme Court, we have previously considered a long list of factors: (1) the identity of the court that first assumed jurisdiction over the property; (2) the relative inconvenience of the federal forum; (3) the need to avoid piecemeal litigation; (4) the order in which the respective proceedings were filed; (5) whether federal or foreign law provides the rule of decision; (6) whether the foreign action protects the federal plaintiff's rights; (7) the relative progress of the federal and foreign proceedings; and (8) the vexatious or contrived nature of the

federal claim. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Sverdrup*, 125 F.3d at 549–50 (discussing cases). Reviewing the decision below in light of *Colorado River* and its progeny, we conclude that the district court did not abuse its discretion in entering the stay.

It is clear that the High Court of St. Lucia was the first to exercise jurisdiction over the subject matter of the dispute: Ryan filed suit in St. Lucia on October 15, 1997 whereas Finova instituted proceedings in the district court on February 6, 1998. Finova protests that the St. Lucia proceedings did not become operative until April 7, 1998, when the St. Lucia court allowed it to intervene. But since Rotorcraft and Panoff—Finova's predecessors in interest—were named in the St. Lucia suit from the outset, the omission of Finova was a mere technicality for present purposes. Finova does not suggest that it was unaware of the St. Lucia litigation at the time it filed the present action and it concedes that the St. Lucia court had jurisdiction over substantially the same issue that it raised in the district court. Thus, we endorse the district court's determination that the St. Lucia court was the first to act.

The parties argue at length about the relative inconvenience of St. Lucia or Illinois as a location for the conduct of the litigation. Finova keenly disputes Ryan's contention that the majority of witnesses and documents are in St. Lucia and points out that *its* chief witness (James Panoff) is an Illinois citizen. The district court sided with Ryan on this score. We believe that the issue is more finely balanced and that the underlying dispute is closely connected to both locations. Recall that one of the parties to the original lease (Rotorcraft) is based in Illinois, the other (Ryan) in Flori-

da and its subsidiary (Ryan Helicopters) in St. Lucia. We are mindful that the predominance of activity under the lease—notably the operation of the helicopters—took place in St. Lucia. But the parties acknowledged ties to both locations by including alternatives in the choice of forum clause in their supplemental agreement.[2] Since St. Lucia and Illinois were expressly selected as acceptable fora for the resolution of disputes, neither side can credibly claim that it is being forced to litigate in an inconvenient forum. In these circumstances, we are reluctant to place much importance on convenience as a factor.

We do think it significant that the helicopters—the subject matter of the dispute—are located on the Island of St. Lucia. Finova attempts to play this down by emphasizing that the underlying dispute between the parties is contractual and not *in rem*. But there is more at issue here than the nature of the action. As long as the helicopters remain in St. Lucia, they fall within the exclusive jurisdiction of the High Court of St. Lucia for all practical purposes. If the district court were to grant the relief Finova seeks—a declaration of ownership and the return of the helicopters—the enforcement of the order would lie in the hands of the St. Lucia court. Moreover, since both proceedings turn on the same core issue, this is a case where "one can predict with some confidence that the [foreign] court litigation will probably eliminate the need for any further proceedings in federal court." *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir.1985). Thus, considerations of judicial economy—notably the need to avoid protracted, piecemeal litigation—favored staying the district court proceedings.

One of the principal reasons why federal courts exercise jurisdiction in the face of parallel proceedings is the need to protect the rights of the federal plaintiff. The fact

---

2. On appeal, Finova does not appear to contest Ryan's assertion, and the district court's conclusion, that the supplemental agreement supplies the operative choice of forum clause in this case.

that this is a diversity suit prompted the district court to conclude that there is no strong federal interest in this case. We have previously recognized that the presumption in favor of jurisdiction applies with equal vigor to diversity suits. *See Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir.1982) ("until Congress decides to alter or eliminate the diversity jurisdiction we are not free to treat the diversity litigant as a second-class litigant, and we would be doing just that if we allowed a weaker showing of judicial economy to justify abstention in a diversity case than in a federal-question case"). But while it is one thing to say that a diversity case requires the same showing of exceptional circumstances to justify abstention, it is quite another to suggest—as Finova does—that this contractual dispute raises particular concerns over the ability of the foreign court to protect Finova's substantive rights. This is not a case involving the application of legal rights or principles unique to, or specially protected by, federal law; the federal interest in the adjudication of a contractual dispute—even one governed by Illinois (as opposed to St. Lucia) law—is far from overwhelming. *See, e.g., Lumen*, 780 F.2d at 696 (noting that, in contrast, "[c]ivil rights complaints indeed command special protection from the federal courts").[3] It was not unreasonable for the district court to conclude that St. Lucia had a substantial interest in the case and that its courts are equipped to resolve it.[4] The parties had conceded as much in their supplemental agreement (providing that a dispute could be resolved by an Illinois or a St. Lucia court applying the laws of either place). Thus, considerations of international comity were furthered by the entry of the stay.

Notwithstanding all of the above, we recognize that the case for abstention here is not watertight; indeed, we think it a closer call than the district court suggests. As noted above, we are less impressed with the importance of convenience as a factor in this case. In addition, the St. Lucia case was filed only four months before the federal action and was still in its preliminary stages. Finova correctly notes that the relative infancy of the St. Lucia proceedings distinguishes the present case from cases such as *Lumen*, 780 F.2d at 696–97, where we endorsed abstention in the face of parallel proceedings that were a good deal further down the road to completion. But while we may part company with the district court on these discrete issues, it is not our task simply to substitute our own perspective. Finova seems to believe that the existence of these factors—indeed of *any* factor favoring district court jurisdiction—is enough in itself to preclude abstention. We disagree. The decision to abstain is based on an assessment of the totality of the circumstances, and the Supreme Court has cautioned against placing too much weight on any specific factor. *See Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. We believe that the district court's decision was "the product of a careful weighing of the factors pertinent to the case at hand" and we cannot fault the overall finding that exceptional circumstances favored abstention. *Sverdrup, .*125 F.3d at 550. We are mindful also that, rather than dismissing the action, the district court took the more measured step of staying the proceedings. *See Ingersoll*, 833 F.2d at 686 ("This ap-

---

3. Nor is Ryan relying on diversity alone "to tip a balance heavily weighted in favor of the exercise of federal jurisdiction." *Schneider*, 903 F.2d at 1157–58.

4. We have previously observed that a district court cannot be faulted for rejecting "the parochial concept that all disputes must be resolved under our laws and in our courts." *Ingersoll*, 833 F.2d at 685. Finova suggests

that the High Court of St. Lucia is not equipped to handle this case. But St. Lucia was selected by Rotorcraft—Finova's predecessor in interest—as an acceptable forum for the resolution of disputes. Contrary to Finova's contentions, we have no reason to doubt that the St. Lucia court will adjudicate the claim effectively.

proach protects the substantial rights of the parties while permitting the district court to manage its time effectively.... Such a common sense approach is clearly within the sound discretion of the trial court."); *Lumen*, 780 F.2d at 697–98. In the circumstances, we conclude that the district court acted within its discretion in entering the stay.

AFFIRMED.